[No. 7569–5–II.   Division Two.   May 14, 1986.]

THE STATE OF WASHINGTON, *Appellant,* v. PAUL DAVID
NIEDERGANG, *Respondent.*

*Arthur D. Curtis, Prosecuting Attorney,* and *James M.
Peters, Deputy,* for appellant.

*Richard A. Petersen,* for respondent.

Reed, A.C.J.—The State appeals the suppression of the only evidence supporting prosecution of Paul David Niedergang for possession of marijuana. We find no error in the trial court's conclusion that the evidence was seized outside the scope of the search warrant, and affirm.

A residence at 3016 Falk Road, Vancouver, faced another, 3012 Falk Road, across an unpaved cul–de–sac at the end of a street. A garage formed the fourth side of this "square." Low concrete curbs separated each house from the traveled portion. The resident at number 3012 testified that any visitor to either house might park anywhere in the square.

Niedergang had lived at number 3016, and his automobile remained registered at that address. However, Niedergang had moved and was living at an apartment in Portland, Oregon.

An informant revealed to the Vancouver Police Department that marijuana was being grown on undeveloped land immediately to the west of number 3016. Police investigation revealed that Niedergang's car was parked next to 3016, beyond the curbing and in the open area, and was registered at that address.[1] The District Court issued a warrant to search: "a single story wood framed residence, yellow in color, having the specific address of 3016 Falk Road, Vancouver, Clark County, State of Washington, including the curtilage thereto, for [marijuana] . . ."

Marijuana was seized at number 3016 and from the hillside behind the house. Marijuana was also seized from Niedergang's car. The trial court found that at all pertinent times Niedergang's car had been parked within two steps from the house, but that the open area in front of number 3016 was not enclosed or otherwise made a private extension of the house. It found that the open space was the ter-

---

[1]This information was included in the affidavit supporting the request for a search warrant. However, it was not included in such a manner as to present probable cause to search the car. Rather, it did no more than suggest, mistakenly, that Niedergang still lived at number 3016.

mination of a private right of way and that visitors to the two houses turned around and parked their cars there. It ruled that by a preponderance of the evidence the possessors of the house at 3016 did not have a reasonable expectation of privacy in the area where Niedergang's automobile was parked, and that this area therefore did not constitute a part of the curtilage of the house.

Because the automobile was not within the curtilage, the court concluded that the search of the car was not within the scope of the warrant. The magistrate had not been asked to consider whether there was separate probable cause to search the auto, and no exception to the warrant requirement was advanced. The court therefore suppressed as evidence the marijuana seized from the automobile. Because Neidergang no longer was a resident of the house, the prosecution conceded that the evidence seized in and around the house could not support further prosecution. Therefore, the court's order of suppression also dismissed all counts. The State appealed, pursuant to RAP 2.2(b)(2).

The State assigns no error to the findings of fact made by the suppression judge. Findings of fact that are not challenged are verities on appeal. *State v. Christian*, 95 Wn.2d 655, 656, 628 P.2d 806 (1981). The court found that the space between 3012 and 3016 Falk Road, where Niedergang's automobile was parked, was merely the final portion of a private right of way to which several houses had access, and that the possessors of the house at 3016 did not have a reasonable expectation of privacy in the area where the car was parked. Under these circumstances, our review is limited to determining whether these findings support the trial court's conclusions of law and judgment. *Seattle v. Shepherd*, 93 Wn.2d 861, 867, 613 P.2d 1158 (1980).

The court also characterized its determination that the open area was not part of the curtilage of 3016 as a finding of fact. If a determination concerns whether evidence shows that something occurred or existed, it is properly labeled a finding of fact, but if the determination is made by a process of legal reasoning from facts in evidence,

it is a conclusion of law. *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.,* 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978). When findings of fact in reality pronounce legal conclusions, they may be treated as such. *Fine v. Laband,* 35 Wn. App. 368, 374, 667 P.2d 101 (1983). If the trial court's determination that the automobile was not parked within the curtilage is a finding of fact, it cannot be reviewed, because the State assigned no error to the findings of fact. However, if it is in reality a conclusion of law, it may be reviewed, because conclusions of law cannot be shielded from review by denominating them findings of fact. *State v. Williams,* 96 Wn.2d 215, 220, 634 P.2d 868 (1981).

■ The United States Supreme Court has characterized the law of curtilage in the following manner:

> At common law, the curtilage is the area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life," *Boyd* v. *United States,* 116 U. S. 616, 630[, 29 L. Ed. 746, 6 S. Ct. 524] (1886), and therefore has been considered part of home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.

*Oliver v. United States,* 466 U.S. 170, 180, 80 L. Ed. 2d 214, 225, 104 S. Ct. 1735, 1742 (1984). The problem that commonly arises is to distinguish between the curtilage, intrusion into which without a warrant the Fourth Amendment forbids, and unprotected areas, such as "open fields." As the Fourth Circuit puts it:

> The concept of curtilage evolved to define and extend the protections of the fourth amendment. . . . In the usual case the government argues that the area searched was *not* within the curtilage of a home. Thus the area is without the protection of the fourth amendment . . .

(Citations omitted.) *United States v. Stanley,* 597 F.2d

866, 870 (4th Cir. 1979). Under these circumstances, it will usually be in the interests of the defendant to argue that the curtilage encompasses as large an area as possible around the dwelling, while the prosecution argues for a restriction of the scope of curtilage.

However, the position of the parties is reversed when, as here, the police have obtained a warrant that permits them to intrude into the curtilage. The defendant therefore seeks to suppress evidence on the ground that it was seized outside the curtilage, "a unique twist in the law." *Stanley,* 597 F.2d at 870. Under those circumstances, as in the present case, it is in the interests of the defendant to argue for as small an area of curtilage as possible, while the prosecution argues that the entire area searched was within the curtilage.

No one factor is always determinative of the question of the scope of the curtilage:

> Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.

*Care v. United States,* 231 F.2d 22, 25 (10th Cir.), *cert. denied,* 351 U.S. 932, 100 L. Ed. 1461, 76 S. Ct. 788 (1956).

It is the need to define the scope of Fourth Amendment protection that raises the question of curtilage. The answer to that question is reached by making, and reasoning from, determinations of fact as to proximity, use and expectation of privacy. Further, appellate courts customarily review the answer to that question by asking whether the facts found substantiate the answer. *See United States v. Van Dyke,* 643 F.2d 992, 993–94 (4th Cir. 1981); *United States v. Williams,* 581 F.2d 451, 453–54 (5th Cir. 1978). Therefore, the determination that the ground between 3012 Falk Road and 3016 Falk Road was not curtilage of 3016 is at the very least a mixed question of fact and law. We may therefore review the correctness of that conclusion, notwithstanding

the State's failure to assign error to the finding.

Washington appellate courts have not previously considered the question of the farthest extent of curtilage when a search warrant expressly directs search of a house and its curtilage. The trial court here correctly perceived, however, that the curtilage under the Fourth Amendment must be an area in which there is some "reasonable expectation of privacy." *See United States v. Williams,* 581 F.2d at 453 (quoting *Katz v. United States,* 389 U.S. 347, 360, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring)). The court therefore suppressed evidence seized from an area in which, on the facts before it, any member of the public could park as Niedergang had parked, and when the police offered no particularized reason to suspect that this car contained marijuana. In so ruling, it reached a conclusion similar to that reached, on similar facts, by the Fourth Circuit in *United States v. Stanley, supra.*

In *Stanley,* a search warrant was issued for a mobile home and its curtilage. The suspect's car then was parked in a common area parking lot that was used by three other tenants of the mobile home park. The lot contained spaces for six or seven cars and no particular space was assigned to any tenant. Evidence seized from the car was suppressed. The court reasoned that the suspect's car happened, on the day of the search, to be parked immediately next to his home, but that because any other tenant could have parked there, the space and the car were not "annexed" to the home or within the "general enclosure" surrounding the home. *United States v. Stanley,* 597 F.2d at 870.

This court's opinion in *State v. Cottrell,* 12 Wn. App. 640, 532 P.2d 644, *rev'd on other grounds,* 86 Wn.2d 130, 542 P.2d 771 (1975) also is relevant here. There a warrant directed search of the *premises* at the defendant's residence address. The defendant was arrested, and his car seized and searched when he pulled up to the curb in front of his home during a raid on the premises. The court held that a public parking place could not be part of the "premises," and, in dictum, suggested that the seizure would not have been

permissible even had the warrant specified "curtilage."
*Cottrell,* 12 Wn. App. at 643–44.

On the undisputed findings of fact, Niedergang's automobile was parked in an area in which a resident of number 3016 could have no expectation of privacy or exclusive use. In addition, it was parked on ground that, however close to the house, was set off from it by a low curb. The vehicle occupied a space that could have been taken by anyone—a salesperson or police officer, for instance—who had legitimate business at either adjoining house. We therefore can find no error in the conclusions that the ground upon which the car was parked was not part of the curtilage of number 3016, and that therefore the search warrant that authorized search of the curtilage of the house could not authorize search of the automobile.

The State urges that, even if we approve the suppression court's findings and conclusions as to the scope of the search warrant, we should fashion a "good faith" exception to the requirement that search pursuant to a warrant be within the strict scope of the warrant, at the cost of exclusion of the evidence seized outside that scope. The United States Supreme Court has, in limited circumstances, held that the exclusionary rule should not be applied when the application of it will not significantly deter misconduct by police or magistrate, but merely punish errors. *United States v. Leon,* 468 U.S. 897, 915–16, 82 L. Ed. 2d 677, 694, 104 S. Ct. 3405, 3418 (1984).

The exclusionary rule in the present case, however, does not merely punish police error. This search warrant was carefully and specifically worded. To approve the seizure of evidence because police interpreted a word with specific legal denotation so as to permit search of an area not so denoted would be to invite police to rely upon ignorance of the scope of the warrants that they seek. Such an exception clearly would not be consonant with the protections of the Fourth Amendment. We decline the State's invitation.

There are additional reasons why we cannot accept the

State's argument. First, the State did not raise the issue at the suppression hearing, so there is no finding by the trial court that the police officers did, in good faith, believe that when they searched Niedergang's automobile they were searching within the curtilage of number 3016. Second, *United States v. Leon, supra,* can furnish no analogy for the exception that the State seeks here. The flaw in the search warrant that the police there relied on in good faith stemmed from the error of the magistrate. Here, the police themselves were completely responsible for the warrant's language and they will not be heard now to say that they did not understand the scope, and the limitations, of the language that they chose.

The order of suppression and dismissal is affirmed.

PETRICH and ALEXANDER, JJ., concur.