[No. 22848-7-III.   Division Three.   June 7, 2005.]

*In the Matter of the License Suspension of* MONTE LEE RICHIE, *Petitioner.*

---

[24] RCW 19.40.041(a)(1).

*Scott D. Gallina,* for petitioner.

*Robert M. McKenna, Attorney General,* and *Charnelle M. Bjelkengren* and *Jacqueline D. Bolden, Assistants,* for respondent.

¶1 BROWN, J. — Monte L. Richie was arrested for driving under the influence (DUI) by a Washington state trooper at an Idaho regional hospital following Mr. Richie's transport from an Asotin County, Washington accident scene. This court granted discretionary review of Mr. Richie's Department of Licensing (DOL) administrative license suspension affirmed by the Asotin County Superior Court. Mr. Richie contends: (1) the hearing officer erred in finding he was lawfully arrested in Idaho; and (2) the hearing officer erred in finding his blood was legally drawn by a "qualified technician" under former RCW 46.61.506 (2003). We clarify this court's consistent holding in *City of Clarkston v. Stone,* 63 Wn. App. 500, 820 P.2d 518 (1991). Finding no error, we affirm.

## FACTS

¶2 On June 29, 2003 at 1:11 A.M., Deputy John Jeffers was dispatched to a one vehicle accident near Anatone, Washington. There, he saw a pickup that had rolled to a stop on its top near the highway. He saw Mr. Richie on the ground next to the driver's side of the pickup with numerous injuries. During the investigation, Mr. Richie was transported to St. Joseph's Regional Medical Center in Lewiston, Idaho. Remaining to investigate, Deputy Jeffers saw an empty beer can near the truck. Washington State Patrol Trooper G.K. Bancroft arrived on the scene to investigate. His analysis indicated the pickup had been traveling about 87.7 miles per hour prior to the accident. Trooper Bancroft was suspicious of DUI.

¶3 Trooper Bancroft pursued his investigation at the Idaho hospital. Mr. Richie was mainly unconscious and unresponsive to the Trooper's loud questions. Trooper Bancroft smelled an odor of alcohol on Mr. Richie's breath. At 4:46 A.M., the Trooper informed Mr. Richie he was under

arrest for DUI by reading the special evidence warning for an unconscious driver.

¶4 Trooper Bancroft asked the hospital staff to call a phlebotomist to take a blood sample from Mr. Richie. Tammy Bower, a phlebotomist from Regional Pathology Laboratory, responded. Ms. Bower took the blood samples, which the Trooper sent to the Washington State Toxicology Laboratory. Mr. Richie's blood alcohol content was tested at 0.13. The chain of custody and blood test results are unchallenged except for the phlebotomist's qualifications.

¶5 Under the above facts, DOL suspended Mr. Richie's license for 90 days. Mr. Richie elected a DOL administrative hearing without testimony. At the administrative hearing, Mr. Richie unsuccessfully contended the Idaho arrest was unlawful and his blood was illegally drawn. The hearing officer relied upon the sworn reports of Trooper Bancroft and Deputy Jeffers to uphold Mr. Richie's license suspension and concluded *State v. Steinbrunn*, 54 Wn. App. 506, 774 P.2d 55 (1989) allowed the Idaho arrest.

¶6 Based upon the administrative record, the Asotin County Superior Court affirmed. The superior court rejected both Mr. Richie's continued illegal arrest argument under *Stone,* 63 Wn. App. 500, and his challenge to the phlebotomist's qualifications. This court granted discretionary review.

## ANALYSIS

### A. Arrest

¶7 The issue is whether, considering *Stone,* 63 Wn. App. 500, the hearing officer erred in finding Trooper Bancroft made a lawful arrest of Mr. Richie in Idaho.

¶8 We review the administrative decision like the superior court. *Clement v. Dep't of Licensing*, 109 Wn. App. 371, 373, 35 P.3d 1171 (2001). Our review is "limited to a determination of whether the department has committed any errors of law." RCW 46.20.308(9). We accept the DOL findings of fact, expressly made or inferred from the final

order, which are supported by substantial evidence in the record below. *Id.* Mr. Richie offered no evidence to dispute the facts at the DOL administrative hearing.

■■ ¶9 Mr. Richie contends his arrest in Idaho by a Washington law officer was unlawful. A lawful arrest triggers implied consent to a sobriety test. *State v. Wetherell*, 82 Wn.2d 865, 869, 514 P.2d 1069 (1973). Generally, law enforcement officers lack the authority to make valid arrests outside of their appointed jurisdiction. *State v. Barker*, 143 Wn.2d 915, 921, 25 P.3d 423 (2001). However, the State responds that Idaho's fresh pursuit statute, Idaho Code section 19-701, authorized Mr. Richie's arrest in Idaho.

■■ ¶10 The hearing officer relied on *Steinbrunn*, 54 Wn. App. 506, a case applying Washington law, in concluding Mr. Richie's arrest was lawful. By its terms, Washington's fresh pursuit statute is inapplicable to arrests made in other states. *See* RCW 10.89.010. Rather, the legality of Mr. Richie's arrest depends on Idaho law:

> [a]ny member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit and continues within this state in such fresh pursuit, *of a person in order to arrest him on the ground that he is believed to have committed a felony in such other state,* shall have the same authority to arrest and hold such person in custody, as has any member of any duly organized state, county or municipal peace unit of this state, to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state.

Idaho Code § 19-701 (emphasis added).

¶11 In *Stone*, 63 Wn. App. 500, this court held a Washington police officer did not have the authority under Idaho Code section 19-701 to arrest in Idaho for a DUI. In *Stone*, the court decided police lacked reasonable suspicion of drinking and driving behavior in Washington before pursuing the driver into Idaho. Here, Washington officers found Mr. Richie at a Washington accident scene where uncontested evidence suggested drinking and driving. The authorities facilitated

Mr. Richie's removal from the accident scene to an Idaho regional hospital for emergency care. Trooper Bancroft soon left the accident scene to follow Mr. Richie into Idaho to continue his investigation, suspicious of drinking and driving behavior.

¶12 This is not a case of hot pursuit into a private area like a home, a different kind of analysis altogether. Rather, this is a case of applying the Idaho fresh pursuit statute to different facts than those found in *Stone*. Our focus is whether Trooper Bancroft possessed a reasonable suspicion that Mr. Richie had been drinking and driving in Washington before he entered Idaho to continue his investigation of Mr. Richie. This is not a case like *Stone*, where the police lacked reason to believe a driver had been drinking and driving in Washington before pursing him into Idaho. The short investigative delay to facilitate Mr. Richie's emergency medical care is immaterial. The State asks us to overturn *Stone*, but we take this opportunity to clarify its holding because the facts are distinguishable and, thus, its legal analysis is susceptible of misinterpretation.

■ ¶13 In interpreting its fresh pursuit statute, Idaho's Supreme Court has found "felony" to include misdemeanors treated as felonies for purposes of arrest in the other state. *State v. Ruhter*, 107 Idaho 282, 283-84, 688 P.2d 1187 (1984). In *Ruhter*, the court decided a Nevada officer lawfully followed a weaving driver into Idaho and arrested him for suspected DUI under Idaho Code section 19-701 because facts developed in Nevada justified the pursuit. Further, DUI is treated as a felony for purposes of arrest in Nevada. *Id.* at 283; *see also* NEV. REV. STAT. 484.379 (allowing arrests for certain misdemeanors, including DUI, without a warrant). The *Stone* court correctly reasoned the holding from *Ruhter* was factually distinguishable because it concluded the pursuing officer in the *Stone* case lacked drinking-and-driving facts before entering into Idaho in pursuit of a driver.

■ ■ ¶14 Here, the record shows the facts suggesting Mr. Richie's drinking and driving behavior were observed in

Washington before Trooper Bancroft's pursuit into Idaho. In *Ruhter*, the officer had reason to believe the driver may have been under the influence prior to pursuing him into Idaho. *See Ruhter*, 107 Idaho at 283. Our facts are similar to those in *Ruhter*. Thus, we reach the same result as in *Ruhter*.

¶15 Like Nevada, Washington treats DUI as a felony for purposes of arrest. *See* RCW 10.31.100(3)(d) (allowing officers with probable cause to believe that a person is driving under the influence to arrest without a warrant). This was true when *Stone* was decided on its unique facts. *See* LAWS OF 1987, § 20, ch. 280 (codified as amended at RCW 10.31.100). Although Washington's fresh pursuit statute is not directly applicable, we note since *Stone,* Washington amended its fresh pursuit statute in 1998 to give foreign law enforcement the authority to make lawful arrests in Washington on suspicion of a felony *or* DUI. *See* RCW 10.89.010.

¶16 Considering the law and our unique facts, we clarify *Stone* and hold that pursuing Washington officers may effectuate a lawful arrest in Idaho for DUI if reasonable suspicion exists to believe the suspect may have been driving under the influence in Washington before the officer pursues the suspect into Idaho. Accordingly, we decline the State's invitation to overturn *Stone*, because its holding is based upon distinguishable facts, even if its legal reasoning may be capable of misinterpretation as suggested by the State.

¶17 In sum, Trooper Bancroft's accident investigation revealed Mr. Richie was involved in an accident with facts indicative of drinking and driving. Trooper Bancroft knew these facts before entering Idaho to pursue his ongoing investigation of Mr. Richie's accident. The Idaho statute merely requires a belief that an individual has committed a felony, not probable cause. *See* IDAHO CODE § 19-701; *see also Steinbrunn*, 54 Wn. App. at 510 (recognizing probable cause to arrest is not required at the time of pursuit). In other words, similar to the situation in *Ruhter*,

Trooper Bancroft had reason to believe Mr. Richie was a DUI suspect prior to "pursuing" him into Idaho. *See Ruhter*, 107 Idaho at 283. In Idaho, Trooper Bancroft properly established probable cause for arrest.

## B. Phlebotomist Qualifications

¶18 The issue is whether, considering Ms. Bower's qualifications, Mr. Richie's blood was legally drawn within the standards of former RCW 46.61.506. The standard of review remains the same.

¶19 In 2003, former RCW 46.61.506(4) provided, "the withdrawal of blood for purpose of determining its alcoholic or drug content may be performed only by a physician, a registered nurse, or a qualified technician."[1] Former RCW 46.61.506(4); *see also* RCW 46.20.308(2) (a blood test shall be administered by a qualified person as provided in RCW 46.61.506(5)). "[T]he plain meaning of the section is that someone who has appropriate and adequate medical training or experience must draw the blood." *State v. Merritt*, 91 Wn. App. 969, 975, 961 P.2d 958 (1998). "Whether a technician is a 'qualified technician' as required by statute is a matter for the discretion of the trial court. A person may qualify as an 'expert' by knowledge, skill, experience, training, or education." *Id.* at 975-76.

¶20 However, a sworn report submitted by a law enforcement officer to DOL is prima facie evidence of compliance with RCW 46.20.308, including the requirement that the blood test was administered by a qualified technician. *See* RCW 46.20.308(8).

[I]f DOL meets its prima facie evidence requirements as specified in the first paragraph of RCW 46.20.308(8), admissibility is determined and DOL may rest without calling witnesses to further authenticate its documentation. If the driver

---

[1] RCW 46.61.506 was amended in 2004. Under the new statute, blood may be drawn by a physician, registered nurse, licensed practical nurse, nursing assistant, physician assistant, first responder, emergency medical technician, health care assistant, or "any technician trained in withdrawing blood." RCW 46.61.506(5).

presents no evidence . . . then the hearing officer can, without more, apply RCW 46.20.308(8) to the case facts after deciding the weight of the evidence.

*Alforde v. Dep't of Licensing*, 115 Wn. App. 576, 582, 63 P.3d 170, *review denied*, 150 Wn.2d 1004 (2003); *see also Lytle v. Dep't of Licensing*, 94 Wn. App. 357, 362, 971 P.2d 969 (1999) (finding that an officer's sworn report is prima facie evidence of compliance with the implied consent statute, requiring rebuttal by a defendant).

¶21 Here, the hearing officer relied on circumstantial evidence provided in the officers' sworn report to determine Ms. Bower was a "qualified technician." The sworn report evidences that Ms. Bower responded to Trooper Bancroft's request for a phlebotomist and that Ms. Bower is a phlebotomist with the Regional Pathologist Laboratory. Although the report does not list Ms. Bower's license status, training, education, or experience, the sworn report is prima facie evidence that Mr. Richie's blood was drawn by a "qualified technician." *See* RCW 46.20.308(8).

¶22 At that point, it was Mr. Richie's burden to come forward with evidence to refute the prima facie case. *See id.* Mr. Richie failed to do this. Because Mr. Richie did not present any evidence, the hearing officer did not err in deciding the case on the evidence presented. Therefore we conclude the hearing officer did not err in finding Ms. Bower was a "qualified technician" for purposes of former RCW 46.61.506(4).

¶23 Affirmed.

KATO, C.J., and SWEENEY, J., concur.