IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RYAN CARMAN, | ) | |
| | ) | No. 38598-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | UNPUBLISHED OPINION |
| OF LICENSING, | ) | |
| | ) | |
| Petitioner. | ) | |

SIDDOWAY, C.J. — After Ryan Carman was arrested for driving under the influence (DUI), was advised of his implied consent rights, and refused to submit to evidentiary breath testing, the Department of Licensing (Department) revoked his driver's license in accordance with Washington's "Implied Consent Statute," RCW 46.20.308. The Department's hearing examiner sustained the suspension, and Mr. Carman sought review in superior court. The superior court overturned the hearing examiner's decision.

The Department sought discretionary review in this court, which our commissioner granted after concluding that the superior court appeared to have "depart[ed] from the usual and accepted course of judicial review proceedings under RCW 46.20.308(8)." Comm'r's Ruling, *Carman v. Dep't of Licensing*, No. 38598-1-III,

at 12 (Wash. Ct. App. Apr. 6, 2022) (on file with court). Because the superior court's

reasons for reversing the hearing examiner amount to rejecting factual findings that are

supported by substantial evidence, we reverse the superior court's order and direct that

the Department's order be reinstated.

FACTS AND PROCEDURAL BACKGROUND

Shortly after midnight on March 19, 2021, Washington State Patrol Trooper C. J.

Cook was patrolling westbound on State Route (SR) 290 (Trent Avenue) when he

witnessed what turned out to be Ryan Carman's vehicle make an improper left-hand turn

onto SR 290. Mr. Carman's vehicle, which had been traveling southbound on Evergreen

Road, made its turn into the far-right lane traveling eastbound rather than the innermost

lane (the left eastbound lane).[1] The trooper turned around and began following Mr.

Carman's vehicle eastbound.

According to Trooper Cook, while following Mr. Carman, he observed two more

traffic infractions, both failures to make a proper turn signal: the first occurred as Mr.

Carman left SR 290 for the off-ramp for Sullivan Road, and the second occurred as he

was turning left from the off-ramp onto Sullivan Road.[2] Once on Sullivan Road, Mr.

---

[1] Under RCW 46.61.290(2), "[t]he driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle."

[2] RCW 46.61.305(2) requires drivers to "signal [their] intention to turn or move right or left . . . continuously during not less than the last one hundred feet traveled by the vehicle before turning."

Carman properly signaled a lane change and a right-hand turn before Trooper Cook activated his emergency lights. Mr. Carman signaled and pulled over to the right side of the road, where Trooper Cook made the contact leading to Mr. Carman's arrest and driver's license revocation.

At the administrative hearing on Mr. Carman's challenge to the revocation, which is before us for review, the hearing examiner made findings about the trooper's contact with, and reasons for, arresting Mr. Carman. They were based on the only evidence offered at the hearing, which was the trooper's report of investigation and dash camera footage from the trooper's patrol vehicle. Neither the trooper nor Mr. Carman testified. The examiner found:

> Upon contacting Mr. Carman, the trooper smelled an obvious odor of intoxicants coming from the vehicle. Mr. Carman had watery eyes. The trooper describes Mr. Carman's voice as having a "heavy slur." [The dash camera footage] corroborates this observation regarding Mr. Carman's speech. Mr. Carman attempted to find the requested paperwork, and the trooper described Mr. Carman's movements as slow and delayed. Mr. Carman admitted to having one beer earlier in the evening. Mr. Carman exited his vehicle without difficulty and walked normally to the front of the trooper's patrol vehicle. When Mr. Carman stood outside of his vehicle, the trooper continued to smell the odor of intoxicants coming from his breath. Mr. Carman declined to take any voluntary field sobriety tests (FSTs). The trooper described Mr. Carman's coordination as "poor" and his level of impairment as "obvious."

Clerk's Papers (CP) at 19-20 (record citations omitted).

Trooper Cook advised Mr. Carman that he was placing him under arrest for DUI and read him his *Miranda*[3] rights. After Mr. Carman decided to leave his vehicle rather than have it towed, and a passenger in Mr. Carman's car was informed he would need to arrange a different ride home, Trooper Cook drove Mr. Carman to the Spokane Valley Police Department. The hearing examiner made the following unchallenged findings about what transpired there:

> Mr. Carman was informed of the implied consent rights and warnings (ICWs) after he had a chance to speak with an attorney. The trooper did not indicate that Mr. Carman asked any questions regarding the ICWs or expressed any confusion about the ICWs.
>
> The trooper asked Mr. Carman if he would submit to a breath test and Mr. Carman said no. The trooper considered this to be a refusal of the breath test and processed the result as such.

CP at 20 (record citation and subheading omitted). The trooper then obtained a search warrant for a blood draw, the results of which were pending at the time of the hearing.

Within days, the Department notified Mr. Carman by letter that his license would be revoked under the authority of RCW 46.20.3101. Mr. Carman filed a timely request for an administrative hearing to contest the revocation.

Mr. Carman contended at the hearing that the dash camera video contradicted Trooper Cook's statements that Carman committed traffic infractions, making the traffic stop unlawful. He contended that the video evidence also contradicted the trooper's statements about Mr. Carman's comportment, and that it showed instead that he answered

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

questions appropriately, did not slur, and did not appear impaired. He argued there were

no reasonable grounds to suspect him of DUI, making the arrest unlawful.

The hearing examiner rejected both contentions. As for the traffic stop, the

hearing examiner entered the following conclusion:

> Overall, the video evidence does not show all of the alleged driving of Mr. Carman. The undersigned does not see video evidence of Mr. Carman turning onto the state route or exiting the state route. Similarly, it is equally difficult to discern from the video whether Mr. Carman had his signal on when turning from the off ramp to Sullivan Road. *The undersigned cannot discount the trooper's narrative remarks in light of the incomplete evidence presented on the video. Ultimately, the trooper describes two instances where Mr. Carman did not signal appropriately. Both times implicate a violation of RCW 46.61.305 (detailing [when] signals are required). These infractions formed a basis to stop Mr. Carman.* There was insufficient evidence to show that the trooper's observations were reasonable [sic].[4] The trooper lawfully contacted Mr. Carman.

CP at 20 (emphasis added).

As for the arrest, the hearing examiner concluded:

> A person's successful performance on one or more field sobriety tests does not vitiate the existence of probable cause for DUI based upon other observations and facts.
>
> In the present case, the trooper smelled an obvious odor of intoxicants coming from Mr. Carman. This observation continued when Mr. Carman was outside of the vehicle. Visually, Mr. Carman had watery eyes and his coordination was poor. The video evidence supports that Mr. Carman had an undeniable slur to his speech. Mr. Carman admitted to consuming one beer earlier in the evening. Mr. Carman declined to perform the FSTs. The video supports that Mr. Carman exited his vehicle

---

[4] Mr. Carman reasonably concedes that the hearing examiner intended in the penultimate statement to say there was insufficient evidence to show that the trooper's observations were "*un*reasonable."

without difficulty and walked without difficulty. However, this positive observation does not overcome the other observations made by the trooper that suggested Mr. Carman was impaired. Just as positive performance on some FSTs does not alone negate probable cause, some positive observations such as walking without difficulty do not negate all other facts known to the trooper including the obvious odor of intoxicants coming from one's breath and slurred speech. At the time of arrest, there were reasonable grounds to believe Ryan Carman was driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or was in violation of RCW 46.61.503.

CP at 21 (citation omitted).

Mr. Carman sought judicial review in superior court. He argued that rather than conclude that traffic infractions had been committed that did not appear in the dash camera video, the hearing examiner should have found that the video proved that Mr. Carman committed no infractions. He also argued that the hearing examiner did not perceive Mr. Carman as appearing uneasy on his feet, as Trooper Cook had, and she should have concluded from what Mr. Carman labeled the trooper's "lie[ ]" and "fabricated evidence" that none of the trooper's other reported observations were worthy of belief. CP at 5-6. Mr. Carman argued that the hearing examiner gave too much weight to the trooper's statements and too little weight to other evidence that might be viewed as exculpatory.

The trial court reversed the hearing examiner's order and signed an order presented by Mr. Carman that provided the following reason for reversal:

Even after accepting those factual determinations supported by substantial evidence in the record that were either expressly made or reasonably

6

> inferred, the Department's final ruling outlined in the Findings of Fact [and] Conclusions of Law which suspended [Mr. Carman]'s privilege to drive was an error of law.

CP at 62.

The Department sought discretionary review by this court. Our commissioner initially requested that the superior court "provide its reasons for its conclusion that the Department's final ruling was an 'error of law.'" Comm'r's Ruling, No. 38598-1-III, at 2 (Wash. Ct. App. Jan. 27, 2022). The superior court entered a clarification order presented by Mr. Carman. In addition to repeating the bare conclusion that sustaining the suspension was an error of law, the superior court found and concluded that (1) the hearing examiner unreasonably concluded that the video evidence was incomplete and failed to show all of Mr. Carman's driving relied on by Trooper Cook, and (2) the examiner's conclusion that Mr. Carman's arrest was lawful was not supported by substantial evidence.

Our commissioner granted discretionary review under RAP 2.3(d)(4), it appearing that the superior court departed from its narrow appellate role under RCW 46.20.308(8).

ANALYSIS

Under Washington's Implied Consent Statute, Washington drivers "'are presumed to have consented to a breath or blood test to determine alcohol concentration if arrested for DUI, but drivers may refuse the test.'" *Lynch v. Dep't of Licensing*, 163 Wn. App. 697, 705-06, 262 P.3d 65 (2011) (quoting *State v. Elkins*, 152 Wn. App. 871, 876, 220

P.3d 211 (2009)). The Department must revoke a driver's license when it receives a sworn police report establishing that (1) the driver was lawfully stopped and arrested, (2) at the time of the arrest, there were reasonable grounds to believe the driver drove while under the influence of alcohol, and (3) after receiving implied consent warnings, the driver refused to provide a breath sample. RCW 46.20.308(5)-(7). Before the revocation takes effect, the driver is entitled to an administrative hearing to contest the required elements. RCW 46.20.308(7). The police report is prima facie evidence of the elements at the administrative hearing, with the burden on the driver to refute it. *Id.* The hearing is civil in nature and the Department's burden is to establish the elements by a preponderance of the evidence. *Bell v. Dep't of Motor Vehicles*, 6 Wn. App. 736, 739, 496 P.2d 545 (1972); *O'Neill v. Dep't of Licensing*, 62 Wn. App. 112, 116, 813 P.2d 166 (1991). If the revocation is sustained, the driver can seek judicial review in superior court. RCW 46.20.308(8).

Critical to our commissioner's grant of discretionary review in this case are the requirements of RCW 46.20.308(8) that the superior court's review "must be limited to a determination of whether the department has committed any errors of law," and that the superior court "shall accept those factual determinations supported by substantial evidence in the record: (a) That were expressly made by the department; or (b) that may reasonably be inferred from the final order of the department."

"Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Dep't of Licensing v. Sheeks*, 47 Wn. App. 65, 69, 734 P.2d 24 (1987). In conducting appellate review, the superior court and this court must be careful to do no more than search for the presence of evidence, and not to weigh it or evaluate credibility, since determinations of weight and credibility are within the province of the hearing examiner in these proceedings, not the courts. *Id.* A reviewing court "will not 'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'" *Cummings v. Dep't of Licensing*, 189 Wn. App. 1, 11, 355 P.3d 1155 (2015) (quoting *McCleary v. State*, 173 Wn.2d 477, 514, 269 P.3d 227 (2012).

The superior court may reverse, affirm, or modify the decision of the Department, or remand the case to the Department for further proceedings. RCW 46.20.308(8). We review the Department's administrative decision just as the superior court did. *In re Richie*, 127 Wn. App. 935, 939, 113 P.3d 1045 (2005).

We first address the superior court's explanation that it reversed the hearing examiner because she unreasonably concluded that the video evidence was incomplete. We then turn to the superior court's explanation that the examiner's conclusion that Mr. Carman's arrest was lawful was not supported by substantial evidence.

I.  THE HEARING EXAMINER'S DETERMINATION THAT THE VIDEO EVIDENCE FAILED
    TO SHOW ALL OF MR. CARMAN'S DRIVING OBSERVED BY TROOPER COOK IS A
    FINDING OF FACT SUPPORTED BY SUBSTANTIAL EVIDENCE

Mr. Carman argued to the hearing examiner that because Trooper Cook's report

stated it was "at approximately 0013 hours" (12:13 a.m.), that Mr. Carman's vehicle

caught his attention (CP at 41), and the trooper recorded the time of arrest as 0021 hours

(12:21 a.m.), then the 7 minute, 58 second portion of the dash camera video that he

offered in evidence must have recorded the infractions reported by Trooper Cook if they

actually occurred.[5]  Because none of the three infractions can be seen in the video, Mr.

Carman argues that the hearing examiner could not reasonably find that they *did* occur.

Mr. Carman submits that the trooper must have been relying on Mr. Carman's driving

---

[5] The Department argues as a threshold matter that the hearing examiner's findings of fact are verities on appeal because Mr. Carman failed to explicitly assign error to any of them in petitioning the superior court for review, citing *Department of Licensing v. Lax*, 125 Wn.2d 818, 822, 888 P.2d 1190 (1995).  At the time *Lax* was being reviewed, however, former RCW 46.20.334 (1972) unqualifiedly provided that a driver whose license was revoked had a right to a hearing de novo in superior court.  LAWS OF 1972, ch. 29, § 4.  Lax was the appellant, and the finding of fact at issue was a superior court finding; it was in that context that this court treated the unchallenged finding as a verity on appeal.  125 Wn.2d at 822 (citing *Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986)).

Under current law, the superior court's review is no longer de novo.  *See* RCW 46.20.308(8) and .334.  RCW 46.20.308(8) provides only that a petition to the superior court "filed under this subsection must include the petitioner's grounds for requesting review."  The Department, not Mr. Carman, is the appellant in this case, so RAP 10.3(g) does not apply.  Where *Lax* is cited as the Department's only authority, we are unprepared to agree that the hearing examiner's findings are verities unless explicitly assigned error in the petition for superior court review.

after turning onto Sullivan Road for the alleged infractions, and the video reveals that Mr. Carman properly signaled his lane change and right turn on Sullivan Road.

The Department's response is that the video did not record the first infraction Trooper Cook observed (the improper turn onto SR 290 from Evergreen Road) because the recording does not begin until after the trooper had already turned around from his westbound travel and had begun to follow Mr. Carman eastbound. Even after the recording starts, Mr. Carman's vehicle cannot be clearly seen for as much as 24 seconds, since Mr. Carman was well ahead of the trooper, who was in the process of catching up. Although the left turn onto Sullivan Road that Trooper Cook recorded as the third infraction *can* be seen on the video, the lighting makes it impossible to tell whether the vehicle properly signaled or not.

The hearing examiner's statement that "the video evidence does not show all of the alleged driving of Mr. Carman" is included in the section of the order headed "Conclusions of Law," but in substance it is a finding of fact. CP at 20 (boldface and some capitalization omitted). A finding of fact is an assertion that evidence shows something occurred or exists, independent of an assertion of its legal effect. *Lanzce G. Douglass, Inc. v. City of Spokane Valley*, 154 Wn. App. 408, 417-18, 225 P.3d 448 (2010) (citing *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981); *State v. Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986)). Conclusions of law are determinations made by a process of legal reasoning from the facts. *Id.* (citing

*Niedergang*, 43 Wn. App. at 658-59).  We review mislabeled findings of fact for what they actually are.  *Id.*

Substantial evidence supports the finding.  The dash camera video records a series of events that correlate with Trooper Cook's report of events occurring *after* he turned and started following Mr. Carman eastbound.  It is a reasonable inference (one might even say it is an unescapable inference) that the recording does not begin until after the first infraction was seen, causing the trooper to change direction.  For the first 20 seconds of the recording, the trooper is gradually gaining on traffic ahead of him.  Because of distance, lighting and the shortcomings of dash camera video, the hearing examiner could and did find that Trooper Cook could have seen signal infractions that cannot be discerned on the video.  Notably, the video does not show that Mr. Carman *did* properly signal when exiting SR 290 and turning left onto Sullivan Road.

Mr. Carman argues that the hearing examiner's finding that the video did not capture the initial infraction creates a "contradiction," because of the 7 minute, 58 second video and what Mr. Carman characterizes as the trooper's 8-minute timeline between the first infraction and the arrest.  Resp. to Dep't's Opening Br. at 16-17.  We disagree. SR 290 is not a divided highway in the area,[6] and having decided to follow Mr. Carman,

---

[6] This can be seen on the video and is also a proper matter for judicial notice.  *Cf. Derheim v. N. Fiorito Co.*, 80 Wn.2d 161, 165, 492 P.2d 1030 (1972) (judicial notice taken of "No U-Turn" signs posted along portions of Interstate Highway 5); *State v. Thompson*, 57 Wn. App. 688, 694 n.7, 790 P.2d 180 (1990) (judicial notice taken that

12

it is reasonable to assume that Trooper Cook quickly turned and changed direction.  In preparing his report, he might reasonably have relied on the time he activated the dash camera for what he recorded as the "approximate[ ]" time when Mr. Carman's vehicle caught his attention.  CP at 41.  There is no contradiction between what the trooper characterized as an "approximate" 8-minute timeline and a series of events that might have taken 15 or 20 seconds more than 8 minutes.

This court has repeatedly observed that "[a] reviewing court must be 'careful to do no more than search for the presence of evidence and not to weigh it or evaluate credibility.'" *Singh v. Dep't of Licensing*, 5 Wn. App. 2d 1, 9, 421 P.3d 504 (2018) (quoting *Sheeks*, 47 Wn. App. at 69).  In ruling that the hearing examiner unreasonably found that the video was incomplete, the superior court improperly reweighed the evidence.

II.     SUBSTANTIAL EVIDENCE SUPPORTS THE HEARING EXAMINER'S FINDINGS IN SUPPORT OF HER CONCLUSION THAT MR. CARMAN'S ARREST WAS LAWFUL

The hearing examiner entertained Mr. Carman's challenge to whether reasonable grounds existed for suspecting him of DUI.  Having heard his evidence and argument, she accepted Trooper Cook's observations regarding Mr. Carman's watery eyes and alcoholic odor.  She also found that the video supported the statement that Mr. Carman was slurring his words.  While she found that Mr. Carman walked without difficulty to

---

about 56 miles of the distance between Wenatchee and Goldendale is via a four-lane interstate highway), *aff'd*, *State v. Greenwood*, 120 Wn.2d 585, 845 P.2d 971 (1993).

the patrol car, contrary to the trooper's characterization that he was uneasy on his feet, she concluded that "this positive observation . . . d[id] not overcome . . . other observations . . . that suggested Mr. Carman was impaired." CP at 21.

Mr. Carman asked the superior court to disregard the credibility determinations and weight that the hearing examiner accorded the evidence. He protests that this is *not* what he was doing; he argues he was merely asking the superior court to recognize that the evidence relied on by the hearing examiner "was not substantial . . . considering the entire record." Resp. to Dep't's Opening Br. at 20. But this *is* asking the superior court to weigh the evidence as Mr. Carman contends it should be weighed, contrary to the narrow review authorized by RCW 46.20.308(8).

Mr. Carman complains that the hearing examiner failed to give proper weight to what he contends was the ease and cogency with which he answered Trooper Cook's questions. There was conflicting evidence of Mr. Carman's cogency, however,[7] and it was the hearing examiner's role, not the superior court's, to decide whether his response to questioning was a sign of sobriety that outweighed signs of inebriation. Mr. Carman *was* asking the superior court to reweigh evidence.

---

[7] Mr. Carman did not always appear to be thinking and communicating clearly. *E.g.*, Ex. B. at 8 min., 11 sec. through 8 min., 15 sec. (saying loudly, "I plead the Fifth," in response to the trooper's question); *see also, e.g.*, 10 min., 17 sec. through 10 min., 20 sec. ("I want all my shit."). At other times, he seemed confused and repeated himself. *See, e.g.*, 9 min., 49 sec. through 9 min., 52 sec.; *see also* 10 min., 42 sec. through 10 min., 45 sec. (expressing confusion about whether he was being detained or arrested despite Trooper Cook answering the affirmative that he was under arrest).

Mr. Carman complains that the hearing examiner failed to consider that his passenger accounted for the smell of intoxicants, and that Trooper Cook's failure to mention the passenger in his report detracts from its credibility. But the dash camera video revealed that the trooper had extended dealings with Mr. Carman after he stepped out of his vehicle, and its door was closed. The hearing examiner was not oblivious to Mr. Carman's argument. But she found that not only had the trooper detected an obvious odor of intoxicants from the vehicle on first contact, but that "[w]hen Mr. Carman stood outside of his vehicle, the trooper continued to smell the odor of intoxicants coming from his breath." CP at 20. In short, she rejected Mr. Carman's argument that the odor of intoxicants did not inculpate him personally. Mr. Carman *was* asking the superior court to reweigh evidence.

The hearing examiner credited the trooper's statement in his report that Mr. Carman's coordination was poor when he was asked for his information. *Compare* CP at 42 ("I observed his movements were slow, delayed and uneasy.") *and* CP at 21 (hearing examiner's finding that Mr. Carman's "coordination was poor"). Elsewhere, Trooper Cook observed that after Mr. Carman was outside his car and standing in front of him, "the defendant appeared uneasy on his feet," yet the hearing examiner described Mr. Carman as "exit[ing] his vehicle without difficulty and walk[ing] normally to the front of the trooper's patrol vehicle." CP at 42, 20. Mr. Carman argued to the superior court that because the hearing examiner's finding on the latter point differed from the trooper's, she

15

should have disbelieved the trooper's report that Mr. Carman was slow, delayed and uneasy in producing his paperwork.  Here again, Mr. Carman *was* asking the superior court to reweigh evidence.

In all, the video and Trooper Cook's report provided substantial evidence supporting the hearing examiner's findings that Mr. Carman's eyes appeared watery, his speech was slurred, his coordination was poor, and an obvious odor of intoxicants came from his breath.  These, in turn, supported her conclusion that Trooper Cook had reasonable grounds for believing Mr. Carman was under the influence of intoxicating liquor and placing him under arrest.

The Department met its burden of demonstrating grounds to revoke Mr. Carman's driver's license.  We reverse the superior court's order and direct that the Department's order revoking the license be reinstated.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____                    _____
Fearing, J.                                                              Pennell, J.

16