# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50372-7-II |
| Respondent, | |
| v. | |
| KASSANDRA MAE JEFFERS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Kassandra M. Jeffers appeals her stipulated facts bench trial conviction for unlawful possession of methamphetamine. Jeffers argues that the trial court erred in denying her motion to suppress the evidence obtained from the search of her purse. We affirm.

## FACTS

### I. BACKGROUND

On the night of December 5, 2016, Officer Andrew Scrivner was on patrol duty when he observed a silver minivan driven by Jeffers. Officer Scrivner knew Jeffers had a warrant for her arrest and dispatch soon confirmed the warrant. Officer Scrivner arrested Jeffers and searched her and her purse incident to arrest. Officer Scrivner found what he believed to be methamphetamine in her purse. The State charged Jeffers with possession of a controlled substance.

## II. CrR 3.6 Hearing

Jeffers moved to suppress the methamphetamine found in her purse. She argued that Officer Scrivner unlawfully seized her purse without exigent circumstances to justify the seizure and that the purse was not in her actual or immediate possession. The trial court held a CrR 3.6 suppression hearing. Officer Scrivner and Jeffers testified at the hearing.

The trial court denied Jeffers's motion to suppress the evidence found in her purse. The trial court entered the following findings of fact and conclusions of law in support of its ruling denying the motion to suppress:

### I. FINDINGS OF FACT

. . . .

1.1. On 12/05/2016, Officer Andrew Scrivner (Toledo PD) was working in the City Limits of Toledo, Washington. He stopped his patrol vehicle at the stop sign at the intersection of Washington Street and South 3rd Street, Toledo.

1.2. Scrivner observed a silver minivan traveling north bound on South 3rd Street. Scrivner knew Kassandra Jeffers from previous traffic stops, and he knew Jeffers typically drives her mother's silver minivan.

1.3. As the van passed, Scrivner's front headlights lit up the driver's compartment of the minivan and he immediately recognized the driver as Kassandra Jeffers.

1.4. Scrivner knew that Jeffers had a warrant out for her arrest because he had checked the warrant list before going on shift.

1.5. Scrivner pulled behind the minivan, activating his emergency lights and stopped the van. Scrivner made contact with Jeffers and informed her that she had a warrant out for her arrest. Scrivner called dispatch and asked to have the warrant confirmed.

1.6. Jeffers produced her driver's license from her wallet.

1.7. Jeffers's wallet was sitting on top of her purse.

1.8. Jeffers's purse was located on the floor of the van, in between the two front bucket seats, a few inches from her leg and elbow.

1.9. Scrivner fully intended to take Jeffers to jail upon confirmation of the warrant.

1.10. While dispatch was confirming the warrant, Scrivner instructed Jeffers to grab her belongings to take with her to the jail.

1.11. Jeffers grabbed her purse and wallet, and got out of the minivan.

1.12. Jeffers's purse and wallet were closely associated with her when she was told to exit the vehicle.

1.13. Scrivner walked Jeffers back to the patrol car. Jeffers placed her purse on the top of the hood of the patrol car and Scriv[n]er put handcuffs on Jeffers in order to detain her pending confirmation of the warrant.

1.14. A few minutes later, dispatch advised the warrant had been confirmed.

1.15. Scrivner advised Jeffers she was under arrest for her warrant.

1.16. Scrivner conducted a search incident to arrest of both Jeffers and her purse.

1.17. Scrivner opened the purse and found two black makeup bags. As Scrivner opened the first makeup bag, he immediately noted several syringes and a plastic container.

1.18. There was a bundle of white crystalline substance inside the container. Based on his training, knowledge, and experience, Scrivner believed the substance to be methamphetamine.

1.19. A [Narcotic Identification Kit] Test of the substance indicated positive for methamphetamine.

1.20. Scrivner impounded the van after he arrested Jeffers. The van was inventoried, and additional items of evidence were found. The State and Defense have stipulated that none of these items will [be] used at trial, and both agree to suppression of all evidence obtained via the impound inventory.

## II. CONCLUSIONS OF LAW

2.1. The defendant's purse was closely associated to her at the time of, and immediately preceding, her arrest.

2.2. The Officer's search of Jeffers, her wallet and her purse were conducted incident to the defendant's arrest.

Clerk's Papers (CP) at 21-23.

### III. Stipulated Bench Trial

Jeffers proceeded with a stipulated facts bench trial. The entered facts were nearly identical to the findings of fact from the CrR 3.6 hearing. The trial court found Jeffers guilty of possession of a controlled substance.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's ruling on a suppression motion to determine whether substantial evidence supports the challenged findings of fact and whether the findings support the trial court's conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). We treat unchallenged findings of fact as verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We review conclusions of law de novo. *Garvin*, 166 Wn.2d at 249. A conclusion of law is a determination "made by a process of legal reasoning from facts in evidence." *State v. Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986). A conclusion of law erroneously labeled a finding of fact is reviewed as a conclusion of law. *State v. Z.U.E.*, 178 Wn. App. 769, 779 n.2, 315 P.3d 1158 (2014), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015).

### II. MISLABELED FINDINGS OF FACT

As a threshold issue, Jeffers argues that the trial court mislabeled finding of fact 1.12 and she claims it is actually a conclusion of law. We agree.

Finding of fact 1.12 states, "Jeffers's purse and wallet were closely associated with her when she was told to exit the vehicle." CP at 22. This is almost identical to the conclusion of law 2.1: "The defendant's purse was closely associated to her at the time of, and immediately preceding, her arrest." CP at 23. The location of an item is an issue of fact, but the determination "made by a process of legal reasoning from facts" that the articles were closely associated with Jeffers is a conclusion of law. *Niedergang*, 43 Wn. App. at 658-59. We hold that the trial court erroneously labeled finding of fact 1.12 and it should be reviewed de novo as a conclusion of law.

## III. Search Incident to Arrest

Jeffers argues that the trial court erred when it denied her motion to suppress because the search of her purse was unlawful. We disagree.

### A. Principles of Law

A warrantless search is per se unreasonable under article I, section 7 of the Washington State Constitution unless the State proves one of the "'carefully drawn and jealously guarded exceptions'" applies. *State v. Byrd*, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting *State v. Bravo Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)). There are two types of warrantless searches that may be made incident to a lawful arrest. *Byrd*, 178 Wn.2d at 617. First, there may be a search of the area within the arrestee's control. *Byrd*, 178 Wn.2d at 617. A warrantless search of the area within the arrestee's control "must be justified by concerns that the arrestee might otherwise access the article to obtain a weapon or destroy evidence." *Byrd*, 178 Wn.2d at 617. Second, there may be a warrantless search of the arrestee's person. *Byrd*, 178 Wn.2d at 617. Searches of the arrestee's person presume exigencies and do not require a case-by-case determination that the search was justified by concerns of officer safety or evidence preservation. *Byrd*, 178 Wn.2d at 618.

### B. Articles Immediately Associated with an Arrestee's Person

1. Actual Possession

Jeffers argues that the *Byrd* case does not support the trial court's decision that the search of Jeffers's purse was a lawful search incident to arrest because the purse was not in her actual possession at the time of the seizure (when Officer Scrivner pulled her over). She says that unlike

*Byrd*, here, she was not holding her purse at the time of her seizure, but it was instead on the floor of the van.

The State argues that under *Byrd* and *State v. Brock*, 184 Wn.2d 148, 355 P.3d 1118 (2015), the search was lawful and the trial court correctly denied Jeffers's motion to suppress. We agree with the State.

2.      *BYRD* AND *BROCK*

The *Byrd* court held that the officer's search of Byrd's purse was a lawful search incident to arrest because the purse was immediately associated with Byrd's person. 178 Wn.2d at 623-24. At the time of her arrest, Byrd sat in the front passenger seat of the car with her purse in her lap. *Byrd*, 178 Wn.2d at 615. Before removing Byrd from the car, the officer took her purse and placed it on the ground. *Byrd*, 178 Wn.2d at 615. The officer then placed Byrd in a patrol car and returned to search the purse. *Byrd*, 178 Wn.2d at 615. He found a sunglasses case in the purse that contained methamphetamine. *Byrd*, 178 Wn.2d at 615.

The court held that a search of an arrestee's person extends to articles "immediately associated" with the arrestee's person. *Byrd*, 178 Wn.2d at 621. To determine whether an article is immediately associated with an arrestee's person, the courts look at whether the arrestee had "actual and exclusive possession at or immediately preceding the time of arrest." *Byrd*, 178 Wn.2d at 623. The court cautioned that this does not include items merely within the arrestee's reach, but instead held that searches of an arrestee's person extend only to personal items "'in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person.'" *Byrd*, 178 Wn.2d at 623 (quoting *United States v. Rabinowitz*, 339 U.S. 56, 78, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting), *overruled in part by Chimel v. California*, 395 U.S. 752, 89 S.

6

Ct. 2034, 23 L. Ed. 2d 685 (1969)); *see also State v. Johnson*, 155 Wn. App. 270, 282, 229 P.3d 824 (2010) (holding that a warrantless search of the defendant's purse was a reasonable search of her person when she exited her vehicle with her purse, she was arrested, placed in the patrol car, and then the officer searched her purse).

Our Supreme Court in *Brock* further examined the scope of "'immediately preceding arrest.'" 184 Wn.2d at 154 (quoting *Byrd*, 178 Wn.2d at 623)). In *Brock*, an officer stopped Brock and removed the backpack Brock was wearing. 184 Wn.2d at 150-51. The officer placed the backpack in the patrol car. *Brock*, 184 Wn.2d at 152. After questioning Brock, the officer arrested him. *Brock*, 184 Wn.2d at 152. The officer then searched Brock's backpack. *Brock*, 184 Wn.2d at 152-53.

Our Supreme Court held that the backpack was a part of Brock's person, even though he was not wearing the backpack at the time of the arrest. *Brock*, 184 Wn.2d at 159. The court held that the lapse of time had little effect on whether the backpack was in his possession immediately preceding his arrest, but "[t]he proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person." *Brock*, 184 Wn.2d at 158. The court further explained that "personal items that will go to jail with the arrestee are considered in the arrestee's 'possession' and are within the scope of the officer's authority to search." *Brock*, 184 Wn.2d at 158.

Jeffers argues that *Byrd* and *Brock* require the arrestee to have "'actual and exclusive possession at or immediately preceding the time of arrest'" and that Jeffers did not have actual

possession of the purse at the time she was stopped.[1]  Reply Br. of Appellant at 6 (quoting *Brock*, 184 Wn.2d at 154 (quoting *Byrd*, 178 Wn.2d at 623)).  Jeffers argues that Washington law distinguishes between actual and constructive possession.  She relies on *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002), to support this argument.

*Jones* is a pre-*Brock/Byrd* case that discussed actual and constructive possession in regard to whether Jones had automatic standing to challenge the search of a passenger's purse.  146 Wn.2d at 332-33.  It defined actual possession as when a defendant "has physical custody of the item" and constructive possession as when a defendant has "dominion and control over the item."  *Jones*, 146 Wn.2d at 333.  However, *Byrd* stated that in the context of a search incident to arrest, actual possession includes items "'in such immediate physical relation to the one arrested as to be in a fair sense a projection of h[er] person.'"  178 Wn.2d at 623 (quoting *Rabinowitz*, 339 U.S. at 78 (Frankfurter, J., dissenting)).

Here, Jeffers was within inches of her purse inside of her minivan and she also grabbed her identification out of her wallet that was on top of her purse when Officer Scrivner seized her.  Based on these facts, Jeffers's purse was "'in such immediate physical relation to [her] as to be in a fair sense a projection of h[er] person'" at the time of the seizure.  *Byrd*, 178 Wn.2d at 623 (quoting *Rabinowitz*, 339 U.S. at 78 (Frankfurter, J., dissenting)).  Officer Scrivner then told Jeffers to grab her belongings to bring with her to jail and she responded by grabbing her purse and wallet

---

[1] Jeffers argues that she did not have actual possession of the purse at the time she was seized.  But the relevant time for the search incident to arrest exception is the time "at or immediately preceding the time of arrest," not the time of the seizure.  *Byrd*, 178 Wn.2d at 623.  However, she appears to focus her argument on the time of the seizure to support her later (incorrect) argument that she only had actual possession when Officer Scrivner ordered her to grab her purse out of her minivan.

as she exited her minivan and placed them on top of the patrol car. Dispatch confirmed the warrant, and Officer Scrivner then searched Jeffers and her purse incident to arrest. Thus, the unchallenged findings of fact support the conclusion that immediately preceding arrest, Jeffers's purse was closely associated with her as to be a "'projection of h[er] person.'" *Byrd*, 178 Wn.2d at 623 (quoting *Rabinowitz*, 339 U.S. at 78 (Frankfurter, J., dissenting)). The purse was also a personal item that Jeffers was going to take to jail and, therefore, according to *Brock*, it was in her possession. 184 Wn.2d at 158.

We hold that Jeffers's argument fails.

2.    OFFICER SCRIVNER ORDERED JEFFERS TO GRAB HER BELONGINGS

Jeffers argues that the only reason she had actual possession of the purse was because Officer Scrivner ordered her to grab her purse. Therefore, she argues that if she had exited the minivan without the purse, Officer Scrivner would have needed a warrant to search it and that he unlawfully created an exigent circumstance. We disagree.

Jeffers cites to *Byrd* and *State v. Snapp*, 174 Wn.2d 177, 275 P.3d 289 (2012), to support her argument that had Officer Scrivner not ordered her to grab her purse, he would have needed a warrant to search it. *Byrd* stated, "Police may not evade *Gant*[2] by removing an article from a car before searching it. . . . It is because, under *Chimel*, the State must justify the warrantless search

---

[2] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). In *Gant*, the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351.

*of every* article not on the arrestee's person or closely associated with the arrestee's person at the time of his or her arrest." 178 Wn.2d at 624-25.

The issue in *Snapp* was whether the officers' warrantless searches of the defendants' vehicles were lawful. 174 Wn.2d at 187. *Snapp* held that once a person is secured and removed from a vehicle, she no longer poses a risk of obtaining a weapon or destroying evidence and a warrantless search of the vehicle is not justified. 174 Wn.2d at 189-90.

Jeffers's arguments are unpersuasive because while a search of the area within the arrestee's control requires there to be concerns of officer safety or the preservation of evidence to justify the search; there does not need to be justification "beyond the validity of the custodial arrest" for a search of articles on or "closely associated" with an arrestee's person. *Byrd*, 178 Wn.2d at 617-18, 625. Here, even before Jeffers grabbed her purse out of the minivan, her purse was closely associated with her immediately preceding arrest because it was located a few inches from her body, and she retrieved her identification from her wallet on top of her purse. Therefore, Jeffers's argument fails.

Jeffers also argues that Officer Scrivner unlawfully created an exigent circumstance by ordering her to grab her purse and that an officer cannot justify a search by creating exigent circumstances. Jeffers contends that since articles associated with an arrestee's person are allowed to be searched incident to arrest without a warrant because they always implicate concerns for the exigencies of officer safety or the preservation of evidence, that Officer Scrivner manufactured

these exigent circumstances by ordering Jeffers to grab her purse. She cites to *State v. Hall*, 53 Wn. App. 296, 302-03, 766 P.2d 512 (1989) (describing the factors to be considered to determine whether exigent circumstances are present and noting that the exigent circumstances cannot be created by the police themselves), *United States v. Webster*, 750 F.2d 307, 327 (5th Cir. 1984) (stating that government agents cannot deliberately create exigent circumstances), and *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir. 1983) (providing that agents cannot justify a search by creating exigent circumstances).

However, unchallenged findings of fact are verities on appeal. *O'Neill*, 148 Wn.2d at 571. And here, it is an unchallenged finding of fact that Officer Scrivner instructed Jeffers to grab her "belongings" to take with her to jail and that Jeffers responded by grabbing her purse and wallet. CP at 22. Thus, he did not create an exigent circumstance because he did not tell her to grab her purse out of the minivan, and her purse was already closely associated with her inside of her minivan. Therefore, Officer Scrivner did not create an exigent circumstance and he did not need a warrant to search her purse because it was closely associated with her immediately preceding her arrest. Accordingly, Jeffers's argument fails.

3. NATURE OF THE ITEM SEARCHED

Jeffers also argues that the trial court erred when denying her suppression motion because a woman's purse is not automatically a part of an arrestee's person. She relies on *Byrd* to support her argument. We reject this argument.

Jeffers is correct that a purse is not automatically associated with an arrestee's person, however her argument fails. In *Byrd*, the court held that a purse was immediately associated with Byrd's person because "'the purse was within Ms. Byrd's reach and could even be described as on her person, not only at the stop but at the time of arrest.'" 178 Wn.2d at 623 (quoting *State v. Byrd*, 162 Wn. App. 612, 618, 258 P.3d 686 (2011) (Brown, J., dissenting), *rev'd*, 178 Wn.2d 611)). Likewise, here, the trial court's ruling on the motion was not solely based on the nature of the item being a purse.[3] The trial court focused on "the fact that it was [a] woman's purse, [and] the fact that it was inches away from her right where her wallet was." Verbatim Report of Proceedings (March 3, 2017) at 45. The trial court made unchallenged findings that Jeffers's purse was located on the floor of the van "a few inches from her leg and elbow," that Jeffers retrieved her identification from her wallet that was on top of her purse, and that she grabbed her purse when she got out of her minivan. CP at 22. These findings support the conclusion that Jeffers's purse was closely associated with her immediately preceding her arrest. Jeffers's argument fails.

---

[3] Jeffers appears to be relying on the trial court's oral ruling where the trial court stated, "This issue turns on the nature of this item and the nature of this being a woman's purse. There are very few things that are much more closely associated with a person than a woman's purse." Verbatim Report of Proceedings (March 3, 2017) at 44. Although we may consider a trial court's oral ruling to interpret its written findings, we cannot rely on the oral ruling if it is inconsistent with the written findings. *State v. Kull*, 155 Wn.2d 80, 88, 118 P.3d 307 (2005). The oral ruling appears to be inconsistent with its written ruling inasmuch as it relies solely on the nature of the item searched.

## C. CONCLUSION

In conclusion, the trial court's findings of fact support its conclusions of law. We hold that the trial court did not err when it denied Jeffers's suppression motion. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

MELNICK, J.