IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BETZ CELLARS, LLC,<br><br>Respondent,<br><br>v.<br><br>RED SCARE MEDIA, LLC, d/b/a<br>VARIAL AGENCY,<br><br>Appellant. | No. 87058-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Thomas Beck appeals the superior court's July 16, 2024, order denying his CR 60(b)(4) motion to vacate a contempt order entered on April 27, 2023, and a judgment entered against him on September 12, 2023. Because most of his claims are untimely and he fails to show the trial court abused its discretion when it denied his CR 60(b)(4) motion, we affirm.

## FACTS

On October 1, 2020, Red Scare Media LLC (Red Scare Media) d/b/a Varial Agency (Varial) entered into a contract with Betz Cellars LLC (Betz) to provide services including market research, strategy development, paid advertising, email marketing, and website design. Thomas Beck signed on behalf of Red Scare Media. Following a dispute, Red Scare Media initiated arbitration. Attorney Cornelius McKnight with the Illinois law firm McKnight & Kitzinger, LLC (McKnight & Kitzinger) represented Red

Scare Media.[1] The demand for arbitration alleged that Varial "acts through its officers Joseph Beason and Thomas Beck."

The final hearing in the arbitration was held in March 2022. Beck and Beason testified as Varial's witnesses. During the hearing, Beck was asked about his role within Varial, and he responded he was the "Chief Executive Officer [(CEO)] . . . [T]he lead strategic officer for the company." Beck also confirmed that Varial is the "DBA of Redscare Media." Ultimately, the arbitrator found that Red Scare Media had failed to prove its claims and was not entitled to recovery. The arbitrator also awarded Betz, as the prevailing party, attorney fees and costs.

In August 2022, Betz moved to confirm the arbitration award in superior court and subsequently filed a certificate of service confirming that the "Petition to Confirm Arbitration Award, Declaration in Support of Petition, [Proposed] Order Granting Petition to Confirm Arbitration Award, [Proposed] Judgment and Notice of Court Date documents" were "served on opposing counsel and Respondent via Email, Certified Mail, Return Receipt Requested . . . and by Mess[en]ger." On August 24, 2022, the superior court entered an order confirming the award and issued judgment in Betz's favor against "Red Scare Media, LLC dba Varial Agency" (judgment debtor).

On January 31, 2023, Betz filed a motion to compel Red Scare Media to "appear before this Court . . . to be examined . . . in supplemental proceedings to answer questions about Red Scare's assets, and to produce documents concerning its assets and property that may be used to satisfy the judgment in favor of Betz." Betz stated in a

---

[1] Throughout the arbitration proceeding, Varial identified itself as "the Petitioner, RED SCARE MEDIA, LLC d/b/a VARIAL AGENCY (hereinafter 'VARIAL') by and through its counsel, MCKNIGHT & KITZINGER, LLC."

declaration that as of January 25, 2023, the judgment remained "wholly unsatisfied." On February 1, the superior court entered an order (First Order) requiring Red Scare Media to be examined and produce documents on March 2. The order was served on Red Scare Media via its registered agent, Beason, on February 4. On February 23, McKnight sent Betz a letter contending the First Order was void as to "Red Scare Media, LLC" since it was "organized in . . . Illinois . . . and involuntarily dissolved [in] 2008." Betz responded, disputing the contention and arguing that "the Order is valid and enforceable against Red Scare Media, LLC d/b/a Varial Agency." (Emphasis omitted).

On March 1, Betz emailed McKnight instructions for "Red Scare Media, LLC d/b/a Varial Agency" to appear for the March 2 examination. In response, McKnight stated that his prior letter was "solely on behalf of Red Scare Media, LLC of Illinois" and that he had "not appeared for any party in this action and [would] not be appearing tomorrow."[2] No one for the judgment debtor appeared for the March 3 examination. The following day, the superior court entered an order (Second Order) stating that "Red Scare Media, LLC d/b/a Varial Agency is in contempt of this Court's Order in Supplemental Proceedings entered by this Court on February 1, 2023," and that the hearing on supplemental proceedings was continued to March 23. The order also stated that "Red Scare Media, LLC's d/b/a Varial Agency's failure to comply with the terms of this Order shall result in the imposition of sanctions pursuant to RCW 6.32.010, including without limitation . . . entry of an order for a bench warrant for the arrest of

---

[2] Betz also asked McKnight if he was representing "Red Scare Media, LLC d/b/a Varial Agency, or Thomas Beck or Joseph Beason." The record did not include an immediate response to this question. However, the next correspondence from McKnight specified that he was "writing on behalf of Thomas Beck."

Varial Agency's Chief Executive Officer, Thomas Beck." The Second Order was served on Red Scare Media via Beason as its registered agent on March 8.

On March 22, McKnight sent Betz a letter "on behalf of Thomas Beck." The letter once again disputed who the judgment debtor was and argued that Beck "is not and never has been a member, manager, officer or owner of the judgment debtor, Red Scare Media, LLC," and that he has "not and never maintained the company records or financial records of the judgment debtor." McKnight also asserted that Betz was obliged to tell the court that none of the pleadings or petitions were served directly on Beck regarding the bench warrant. Betz responded the following day, disputing the contention that Beck was not a "member, manager, officer or owner."

No one appeared on behalf of the judgment debtor at the March 23 supplemental proceeding. The superior court held "Red Scare Media, LLC [d/b/a] Varial Agency" in contempt and imposed a daily sanction of $250. It also continued the supplemental proceeding to April 13, which would "constitute the purge hearing for contempt." The purge conditions concerned complying with the original February 1, 2023, order, and the court stated that if Betz wanted to request a bench warrant, it could submit briefing. On March 28, "Red Scare Media, LLC [d/b/a] Varial Agency" was served with the contempt order (Third Order) and an order continuing the supplemental proceeding via its registered agent, Beason. Betz emailed the order to McKnight "as counsel for Thomas Beck" on March 27.

On April 6, Betz submitted supplemental briefing in support of a bench warrant for Beck's arrest. The certificate of service indicated that "Red Scare Media, LLC d/b/a Varial Agency" was served at two separate addresses via overnight delivery and that

4

"Cornelius McKnight" received the brief via overnight delivery and email. Neither McKnight nor anyone else on behalf of Beck or "Red Scare Media, LLC d/b/a Varial Agency" filed opposing briefing.

Beck appeared at the April 13 hearing. Stan Kitzinger from McKnight & Kitzinger was also present and attempted to appear as Beck's counsel, but the court noted that it did not see a notice of appearance for him. When Kitzinger attempted to "move orally to appear pro hac vice," the court denied his request because there was not a "payment of the fee and a sponsored attorney."[3] During the hearing, Betz reiterated that it sought to examine Beck on behalf of the judgment debtor. The court asked if Beck was "willing to proceed with the examination as judgment debtor on behalf of . . . Red Scare Media," and Beck responded that he was not the CEO of Red Scare Media and that he appeared solely due to the threat of a bench warrant against him. When asked to confirm whether he was "employed . . . associated with or an officer of Varial Agency," Beck stated he was "not a representative of Red Scare Media." Beck and Kitzinger each separately requested additional time to submit briefing, and the court responded that nothing was before it to grant a continuance. Betz requested that the court keep the contempt order in place and issue a bench warrant for Beck because even though he disputed association with Red Scare Media, "he [did] not identify whether he is associated with Varial Agency, which, again, [its] supplemental brief and the evidence . . . submitted . . . shows that they are in fact one and the same agency." Betz also requested a continuance of the supplemental proceeding to examine the judgment debtor until April 27.

---

[3] Kitzinger made a total of three oral requests to "appear pro hac vice" and offered to "submit something on behalf of [] Beck" before the court considered taking any action against Beck.

5

The court continued the matter to April 27, increased the daily sanctions against "Judgment Debtor Red Scare Media, LLC, d/b/a Varial Agency" to $500, reserved on the issue of a bench warrant, and warned "further failure to comply with the orders will result in additional monetary sanctions." In its corresponding order entered on April 14 (Fourth Order), the court found that Beck's refusal to proceed with the examination "as a representative of Varial Agency in direct violation of several court orders . . . is a contemptable action." It also held that if "Beck continues to violate the court order directing examination, the court will consider issuance of a contempt order and daily sanction as to him separate from the contempt order for Varial Agency." The Fourth Order was served on "Red Scare Media, LLC d/b/a Varial Agency" via its registered agent, Beason, on April 15, and attorneys McKnight and Kitzinger were served "as counsel for [] Beck" by email and mail on April 14.

At the April 27 hearing, Beck did not appear personally, nor did counsel appear on his behalf. The court noted for the record that it reviewed the electronic court file and did not see a motion for pro hac vice status. It also stated that it reviewed the supplemental briefing that Betz submitted for the last hearing, including the proposed orders. It found that "Varial remains in violation of contempt of this Court's order" and increased the daily sanction to $750. It also specified that no further purge hearings would be set at the time without a motion, as there had been an opportunity to comply with the order. As for Beck, a warrant issued "for his arrest with a bond in the amount of $500," and the court entered "[a]n order finding of contempt for failure to appear at this hearing after appearing at the last hearing," as well as a "daily sanction of $250 per day for [] Beck individually." Betz sent the contempt order and bench warrant by email and

6

mail to both McKnight and Kitzinger. On April 30, Betz also served the contempt order and bench warrant on "Red Scare Media, LLC d/b/a Varial Agency" via Beason.

On May 25, 2023, "Redscare Media, LLC" filed a chapter 7 bankruptcy case. The next day, "on behalf of Thomas Beck," McKnight & Kitzinger forwarded a copy of the "Redscare Media, LLC Notice of Chapter 7 Bankruptcy Case and Application Designating Responsible Individual" to Betz and the superior court. Betz and McKnight then exchanged emails disagreeing as to which party should submit a motion quashing the bench warrant. McKnight emphasized they had "not appeared in this matter on behalf of the judgment debtor or [] Beck" and also stated Betz did not "need our client's approval to withdraw the warrant." Subsequently, Betz submitted a motion to withdraw and cancel the bench warrant for Beck's arrest, and the court entered an order granting the motion and quashing the bench warrant.

In the bankruptcy case, Varial produced some documents identifying Beason as its only initial member and shareholder but also identified Beck as its "Founder." Pursuant to a subpoena in that case, Varial produced additional documents indicating that Beck was an "independent contractor for Varial" and that "Beck was never a member, shareholder, investor, or employee and had no ownership or membership in Varial."[4]

On August 27, 2023, Betz submitted a declaration confirming that neither "Red Scare Media, LLC d/b/a Varial Agency" nor Beck had paid any portion of the amounts owed to Betz. Accordingly, Betz sought a judgment against Beck for the unpaid sanctions imposed against him. Betz sent its motion to McKnight via email and mail. On

---

[4] On July 21, 2023, the bankruptcy case closed.

September 12, 2023, Beck sent a letter to the superior court disputing entry of the judgment against him and asserting that he is not an "owner, officer, shareholder, member, or manager of Red Scare Media, LLC." The superior court entered a judgment against Beck that same day. The court sent the judgment to McKnight through email and mail.

On April 23, 2024, Beck filed a motion to show cause to vacate the judgments and orders against him. The court granted the motion and set a show cause hearing on Beck's motion to vacate for July 5. Beck sought to vacate both the contempt order from April 27, 2023, and the judgment from September 12, 2023, against him pursuant to CR 55(c)(1) and CR 60(b)(4). On July 16, the superior court denied Beck's motion to vacate. The court held that Beck's "reliance on CR 55 is misplaced as no order of default ever issued," and that "[t]here is no basis under CR 60(b)(4) for relief" as Beck "has not met the evidentiary burden or factual burden to establish relief under the only authority they cite."

On August 13, 2024, Beck filed a notice of appeal seeking to review "[t]he trial court's 'Judgment' dated September 12, 2023," and "[t]he trial court's 'Order Denying Thomas Beck's Motion to Vacate' dated July 16, 2024."

DISCUSSION

Beck argues the trial court abused its discretion in denying his motion to vacate the contempt orders and judgment under CR 60(b)(4).[5] He also asserts the superior court erred when it found him in contempt and imposed daily sanctions against him without proper notice or service of process. He further argues the sanctions imposed on

---

[5] On appeal, Beck does not challenge the court's denial of his motion for relief pursuant to CR 55.

him were punitive and therefore unconstitutional, and the trial court exceeded its statutory authority under RCW 6.32.180 by finding him in contempt for failure to appear at a hearing. Finally, he contends the trial court violated the automatic stay from a related bankruptcy case by imposing sanctions against him.

I.  Scope of Appeal

As an initial matter, our review is limited to whether the denial of the CR 60(b) motion was proper. CR 60(b) permits a superior court to vacate a final judgment, order, or proceeding. However, "CR 60(b) does not allow a litigant to challenge the underlying judgment and 'correct any errors of law into which [the court] may have fallen.' " Sangha v. Keen, 4 Wn.3d 852, 869-70, 568 P.3d 1118 (2025) (internal quotation marks omitted) (quoting In re Est. of Jones, 116 Wash. 424, 428, 199 P. 734 (1921)). Indeed, "[a]n appeal from denial of a CR 60(b) motion is limited to the propriety of the denial not the impropriety of the underlying judgment." Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). Thus, "[a]n 'unappealable final judgment cannot be restored to an appellate track by means of moving to vacate and appealing the denial of the motion.' " Sangha, 4 Wn.3d at 870 (quoting State v. Gaut, 111 Wn. App. 875, 881, 46 P.3d 832 (2002)). Instead, "[t]he exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not appeal from a denial of a CR 60(b) motion." Bjurstrom, 27 Wn. App. at 451 (citing De Filippis v. United States, 567 F.2d 341, 342 (7th Cir. 1977), overruled in part by United States v. City of Chicago, 663 F.2d 1354 (7th Cir. 1981)).

Under RAP 5.2, a notice of appeal must generally be filed within the 30 days after entry of the decision to be reviewed, with exception of appeals of certain specified

types of motions decided after entry of an appealable order that are not at issue here.[6]
RAP 5.2(a), (e). Here, in his briefing on appeal, Beck challenges the contempt order
entered on April 27, 2023, and the resulting judgment against him, entered on
September 12, 2023. Beck argues the superior court exceeded its statutory authority
when it held him in contempt, lacked authority to impose punitive sanctions against him,
and violated his due process rights by imposing sanctions without proper notice and an
opportunity for a hearing. But Beck did not file his notice of appeal until August 13,
2024, well over 30 days after each of the orders being appealed. And that notice of
appeal challenged only the order denying his motion to vacate. Accordingly, Beck did
not file a timely notice of appeal for either the contempt order from April 27, 2023, or the
judgment on the contempt order from September 12, 2023.

Beck also argues that the daily sanctions accruing against him are void because
they violated the automatic stay pursuant to Red Scare Media's bankruptcy filing. In
response, Betz contends that Beck "waived this argument and cannot now raise it for
the first time" on appeal. We agree with Betz that because Beck did not raise this
argument below as a basis for the CR 60(b)(4) motion, he waived it under RAP 2.5(a).[7]

Thus, the only question before this court is whether the superior court abused its
discretion when it denied his CR 60(b)(4) motion on July 16, 2024.

---

[6] These motions include motions for arrest of judgment under CrR 7.4, motions for new trial under
CrR 7.5, motions for judgment as a matter of law under CR 50(b), motions to amend findings under CR
52(b), motions for reconsideration or new trial under CR 59, and motions for amendment of judgment
under CR 59. RAP 5.2(e)

[7] Betz also argues that the argument fails on the merits because the superior court entered the
contempt order before the bankruptcy filing, and the order is exempt. We need not address the merits, as
the argument is waived.

II. Denial of CR 60(b)(4) Motion

Beck argues that the superior court abused its discretion in denying his CR 60(b)(4) motion to vacate because Betz presented "numerous false assertions to the trial court ensuring that Beck had been properly served with all of the underlying motions and orders in the supplemental proceedings."[8] We disagree with Beck.

CR 60(b)(4) states that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . [f]raud (whether . . . intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." "The party attacking a judgment under CR 60(b)(4) must establish the fraud, misrepresentation, or other misconduct by clear and convincing evidence." Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). "The rule is aimed at judgment unfairly obtained, not factually incorrect judgments." Sutey v. T26 Corp., 13 Wn. App. 2d 737, 756, 466 P.3d 1096 (2020). "[T]he fraudulent conduct or misrepresentation must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren, 58 Wn. App. at 596 (emphasis omitted). "[M]isconduct or misrepresentation need not be intentional but may merely be careless." Hor v. City of Seattle, 18 Wn. App. 2d 900, 912, 493 P.3d 151 (2021).

We review a superior court's ruling on a CR 60(b) motion for abuse of discretion. Jones v. Home Care of Wash., Inc., 152 Wn. App. 674, 679, 216 P.3d 1106 (2009). "Discretion is abused where it is exercised on untenable grounds or for untenable

---

[8] Beck does not properly assign error to specific findings of fact or conclusions of law as required by RAP 10.3(a)(4). Nevertheless, as in his briefing he identifies specific paragraphs of the court's order that he challenges, we exercise our discretion to treat those as assignments of error. See Noble v. Lubrin, 114 Wn. App. 812, 817, 60 P.3d 1224 (2003) ("[A]ppellate court may excuse a party's failure to assign error where the briefing makes the nature of the challenge clear and the challenged finding is argued in the text of the brief.").

reasons." Id. And "where the evidentiary standard is clear and convincing, we uphold the trial court's findings of fact if they are supported by 'highly probable' substantial evidence." In re Marriage of Mueller, 140 Wn. App. 498, 505, 167 P.3d 568 (2007) (quoting In re Marriage of Schweitzer, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997)). "Reviewing a superior court decision under this standard does not permit us to weigh evidence, which is a superior court function." Id. "We merely review the factual findings to determine whether they are properly supported by substantial evidence, and whether they in turn support the legal conclusions." Id.

Specifically, Beck challenges several paragraphs in the order denying the CR 60(b)(4) motion.[9] First, he challenges paragraph 19, which states,

> 19) Betz complied with RCW 6.32.130.[10] Mr. Beck through the supplemental proceedings has disputed his role in Varial; however, the proper means to address this was to be examined rather than attempt to obfuscate his role through pleadings after issuance of the order to appear and be examined already issued.

Beck argues that "the erroneous contempt order imposing sanctions against [him] and the improper judgment entered against him were both caused by [Betz's] numerous false assertions to the trial court that" stated "Beck had been properly served with all of the underlying motions and orders in the supplemental proceedings." All of the instances Beck highlights are statements by Betz to the superior court that Beck was

---

[9] The court did not separately label findings of fact and conclusions of law, but instead stated that it "finds and concludes the following," with 27 enumerated paragraphs. "Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "When findings of fact in reality pronounce legal conclusions, they may be treated as such." State v. Niedergang, 43 Wn. App. 656, 659, 719 P.2d 576 (1986). "We review conclusions of law de novo, whether or not the trial court styles them conclusions of law." Mack v. Armstrong, 147 Wn. App. 522, 529, 195 P.3d 1027 (2008).

[10] RCW 6.32.130 is the statute that controls the service of orders in the enforcement of judgments.

properly served. For example, he complains of the following statements in Betz's motion for entry of judgment against him are "misrepresentations of proper service"

- " 'Varial Agency and Thomas Beck were properly served with the Fourth Order' issued by the superior court on April 14, 2023."
- "Beck was properly served, through counsel, of the Contempt Order."
- "[Betz's counsel] satisfied the notice requirement of CR 54 because she 'sent [] Beck's counsel a copy of the proposed judgment.' "

He also points to Betz's counsel's statements to the court at the hearing on April 27, 2023, that she had served copies of the Fourth Order on Beck's counsel.[11] There, Betz stated to the court, "I did send copies of your latest order on his counsel that had appeared – his Illinois counsel – at the last hearing." As to all of these statements, he asserts, "There is no question that [Betz's] counsel knew that Beck had not been properly served with anything in the supplemental proceedings" because "the record shows direct correspondence between McKnight and [Betz's] counsel in which McKnight informs her numerous times that Beck had not been served."[12] He then claims that Betz's misrepresentations regarding proper service on Beck resulted in the entry of judgment against him.

However, as was the case here, in a supplemental proceeding, a party may order a judgment debtor to be examined after the entry of a judgment against them. RCW 6.32.010(1). When the judgment debtor is a corporation, the court may cause it to appear by issuing orders directed to "any officer or officers thereof." RCW 6.32.190. On

---

[11] He also argued that "Respondent repeated this in the motion for entry of judgment: 'Thomas Beck, although properly served with the Fourth Order, failed to comply with the Court's Fourth Order.' "

[12] For example, he notes that McKnight & Kitzinger sent an email to Betz on March 23, 2023, McKnight stated "none of this has been properly served on Mr. Beck," "you did not serve any pleadings, petitions, affidavits or orders [] on Mr. Beck," and "You did not serve any of the pleadings, or filings on Mr. Beck." Further, on June 2, 2023, McKnight stated in another email to Betz, "We have not appeared in this matter on behalf of the judgment debtor or Mr. Beck."

appeal, Beck does not challenge the court's finding that "[t]here is no credible dispute that Mr. Beck was an officer and/or agent of Varial and . . . could have offered information related to Varial's assets or location of assets and liabilities."

The trial court concluded that Beck did not meet his CR 60(b)(4) burden of establishing that fraud, misrepresentation, or other misconduct by clear and convincing evidence. The trial court reasoned that the "plain language" of CR 60(b)(4) did not apply and that

> 21) Beck's own actions rendered him subject to contempt and judgment therein. The moving party fails to address this at all or any applicable statutory factors under RCW 6.32 et[] seq. [] Beck's refusal to be sworn and examined when he appeared and his failure to appear at the reset hearing as ordered are the reasons sanctions and contempt were found and issued against him.[13]

Beck challenges this finding on appeal. However, the finding is supported by "highly probable" substantial evidence. See Mueller, 140 Wn. App. At 505 (appellate court upholds findings of fact if they are supported by "highly probable" substantial evidence). For example, Beck does not challenge the factual findings that he personally appeared at the April 13 hearing and refused to proceed with examination as a representative of the judgment debtor. Nor does he dispute that at the hearing, the court stated that the contempt order against Red Scare Media remained, the daily sanctions remained, and that it would consider issuance of a warrant against him personally. The court also explicitly stated in Beck's presence that it was continuing the hearing to April 27. The court's written order further specified that "Beck's refusal to comply with an order of the

---

[13] Beck challenges this conclusion by the trial court, arguing that because "[t]he contempt order and sanctions violated Beck's constitutional due process rights and the statutory provisions of RCW 6.32.180 and RCW 7.21.050 . . . there can be no question as to whether CR 60(b)(4) applies here." However, as discussed above, this argument is beyond the scope of our review of the denial of the CR 60(b)(4) motion.

court is a contemptable action" and that to appear in court on Beck's behalf, McKnight & Kitzinger would need to comply with APR 8.

Beck also does not challenge the following findings by the trial court: Beck failed to appear at the continued hearing on April 27. When he failed to appear at the April 27 hearing, he was personally found in contempt for failing to comply with the court's orders and that "[d]espite receiving instructions on how to proceed with multiple opportunities to appear before the court . . . Beck elected to absent himself from the proceedings." Finally, "[t]he judgment and contempt findings as to Mr. Beck are related to his own actions and failure and/or refusal to comply with court orders as provided by statute." Because those findings are unchallenged, they are verities on appeal. See Zunino v. Rajewski, 140 Wn. App. 215, 220, 165 P.3d 57 (2007), overruled in part by Hanna v. Margitan, 193 Wn. App. 596, 373 P. 3d 300 (2016) (We treat unchallenged findings as verities on appeal). This unchallenged evidence supports the superior court's determination that Beck created the conditions that resulted in his sanctions— not any fraud, misrepresentation, or misconduct by Betz.

Moreover, the evidence supports the portion of the court's order that Beck does challenge, relating to whether McKnight & Kitzinger represented him:

> 23) The moving party emphasizes the undersigned requiring counsel to appear on behalf of a person be admitted to practice in the state of Washington. The requirements for appearance on behalf of another in no way relate to whether the parties have an attorney-client relationship. The only limitation is the attorney's ability to appear in a court on behalf of another. This is demonstrated in many common circumstances including in-house corporate counsel and here where, when convenient, counsels Kitzinger and McKnight were counsel for Mr. Beck, but when inconvenient denied being counsel. The denials are not credible when counsels acted on behalf of [] Beck in communication with [] Betz and refer to him as their client. Their decision to not follow the rules to appear in this action does

not change that they held themselves out as counsel and this reliance was reasonably relied upon by Betz.

(Emphasis added). "Credibility determinations by the finder of fact are not reviewable." In re G.W.-F., 170 Wn. App. 631, 641, 285 P.3d 208 (2012). And there is substantial evidence to support the court's determination that Betz reasonably relied on McKnight & Kitzinger holding itself out as counsel. As the court noted, McKnight & Kitzinger did serve as counsel, including for purposes of service, for Red Scare Media and Beck, throughout the arbitration and during the initial proceeding to enforce the arbitration award. Kitzinger also attempted to appear at the supplemental proceeding, though he did not comply with the requirements to be admitted pro hac vice. But "when inconvenient," the trial court noted, the firm denied being Beck's counsel. Beck fails to establish any error in paragraph 24 of the court's order concluding that Betz did not engage in fraudulent conduct or misrepresentation.

Beck similarly challenges the court's statement in paragraph 26 of its CR 60(b)(4) order that the relief he requested in his motion to vacate was not warranted "because Beck and Defendant and Judgment Debtor Varial were properly served with the Court's orders requiring their appearance and compliance in supplemental proceedings and they received actual notice." While Beck disagrees that service on McKnight & Kitzinger constituted service on him, as discussed above, Beck does not dispute that he personally appeared at the April 13 hearing and refused to proceed with examination, and that at that hearing, the court announced that the contempt order against Red Scare Media remained, the daily sanctions remained, and that it would consider issuance of a warrant against him personally. He does not contest that he was aware that the supplemental proceeding would continue on April 27, that the court's written

order specified that his continued refusal to comply with a court order "is a contemptable action" and that to appear in court on Beck's behalf, McKnight & Kitzinger would need to comply with APR 8. We do not disturb the trial court's findings and conclusions that Betz's service on McKnight & Kitzinger with the request to Beck to be examined was service on Beck,[14] and thus, that Betz complied with RCW 6.32.130.[15]

Beck does not establish that the trial court's findings were not supported by substantial evidence or that its conclusion that CR 60(b)(4) was not satisfied was erroneous. We therefore conclude that the trial court did not abuse its discretion in denying Beck's CR 60(b)(4) motion.

III.  Attorney Fees

Betz requests attorney fees and costs under RAP 18.9 and 18.7 due to Beck filing a frivolous appeal. "RAP 18.9(a) authorizes this court to impose sanctions against a party who brings an appeal that is frivolous and brought for the purpose of delay." Rhinehart v. Seattle Times, 59 Wn. App. 332, 342, 798 P.2d 1155 (1990). "Sanctions may include, as compensatory damages, an award of attorney's fees to the opposing party." Id. "In addition, if an appeal is found to be frivolous, this court can award CR 11 sanctions pursuant to RAP 18.7 against the party or his counsel filing the frivolous and non-meritorious action." Id.

---

[14] CR 5 states that service of orders, pleadings, papers, written motions, written "notice, appearance, demand, offer of judgment," "designation of record on appeal," and "similar paper shall be served upon each of the parties." CR 5(a). "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney[,] the service shall be made upon the attorney unless service directly upon the party is ordered by the court." CR 5(b)(1).

[15] RCW 6.32.130 controls the service of orders in supplemental proceedings and provides, "an order requiring a person to attend and be examined made as prescribed in this chapter must be served by delivering to the person to be served a certified copy of the original order and a copy of the affidavit on which it was made." RCW 6.32.130.

"An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). "And we resolve all doubts to whether an appeal is frivolous in favor of the appellant." Id.

Beck raised several arguments that we concluded are beyond the scope of the appeal. However, at least one issue remained for this court to review. Rejecting a party's arguments and affirming a decision below does not mean the arguments are frivolous for purposes of an attorney fee award. See Matter of Custody of A.T., 11 Wn. App. 2d 156, 171, 451 P.3d 1132 (2019). Here, while Beck's arguments were ultimately unpersuasive, they were not so devoid of merit as to be frivolous. Thus, we decline to award attorney fees and costs under RAP 18.9 and 18.7.

CONCLUSION

Affirmed.

_____
Chung, J.

WE CONCUR:

_____        _____
Feldman, J.                             Mann, J.

18